Number 19, 14278 Johnson v. Lang et al. Ms. Bauer? Good morning, Your Honors, and may it please the Court. Leah Bauer on behalf of Plaintiff Appellant Mr. Johnson. Your Honors, the Eighth Amendment requires that inmates be furnished with basic human needs, one of which is reasonable safety and another basic sanitation. During his time at Holman Correctional Facility, Mr. Johnson was deprived of both. The District Court erred in analyzing each of Mr. Johnson's claims before this Court today and granting summary judgment on behalf of defendants. And I'd like to start with Mr. Johnson's claim against Sergeant Lang because the error there is really the most straightforward and clear-cut. Mr. Johnson's claim that Sergeant Lang watched an ongoing attack against him and failed to intervene really presents a straightforward credibility question that feels suited for disposition on summary judgment. Mr. Johnson states that Sergeant Lang stood by and watched from outside the housing unit gate while he was attacked by two inmates. Sergeant Lang, for his part, states that he wasn't there at all because he was assigned to the segregation unit that day. The record evidence on this point is inconclusive. The records do not show, as Sergeant Lang states, that he was assigned to segregation that day, but they do show that in the 30 minutes leading up to the attack on Mr. Johnson, Sergeant Lang was conducting a prison-wide bed count and thus could have been anywhere in the facility at that time, including precisely where Mr. Johnson said that he was. Let's assume, as we must, that Sergeant Lang was, in fact, outside the cell and witnessed the stabbing. Why are the allegations that Mr. Lang has put forth, which consist of Sergeant Lang stood outside and watched, Sergeant Lang was present standing at the bars looking in, why isn't more needed? Why isn't more that this is when he arrived, he arrived before the stabbing, he saw the stabbing take place, he sat there completely inactive for the entire length of the stabbing, that his delay in calling for help caused harm to Mr. Johnson, because certainly a correctional officer who's alone, who witnesses an inmate stabbing like this, is not required alone to intervene. But if we don't know how long Sergeant Lang was there, and we don't have any allegation that he was there for a long period of time, we just know he was there and saw, why is that enough just that for one moment he was there and saw? Why is that enough? Your Honor, I think there's a few responses to that question because it encompasses a few different questions here. And the first is that I think you're right. If Mr. Johnson had been represented, I think there's more that could be said here. We could spin this out further. Sergeant Lang stood at the door and watched me be attacked and did nothing. Perhaps an attorney would also say he did not call for help. He did not create a distraction. He did not bang on the door. He did not rush in. But I think Mr. Johnson, proceeding pro se, although his testimony is relatively short, it gets to the gravamen of the issue here. Sergeant Lang stood outside the door and watched as the inmates attacked me. And in another pleading he says, the inmates could have struggled with me until daybreak if need be because he just stood there and watched. I think the way that we get to the necessary elements here is that at this stage in summary judgment, and even more so because Mr. Johnson is pro se, we need to read the record as a whole and to read the record documents in the light most favorable to Mr. Johnson.  In fact, he maintains 78 times. The prison's records show 49 documented, identifiable, separate stab wounds. So we know from the record evidence that the attack lasted long enough for two inmates to land 49 successful stabs on Mr. Johnson's person. It was not an instantaneous attack. It's reasonable to infer that this attack lasted one, two, three, several minutes. Again, Sergeant Lang's testimony is not that he was alone and couldn't rush in. It's not that he tried to call for help. It's that he simply wasn't there. And so we have a fact issue at the element of knowledge. I'm assuming all of your facts are true. Why is it enough to simply say he stood outside the bars and watched? What if he arrived at blow 48 and only saw one and Officer Mitchell was calling for help at the same time? If we can't place Sergeant Lang temporarily in the midst of this attack, if he was there standing outside the bars at the beginning of the attack, that matters. What if he arrived on the second to last blow? Would that matter that he stood outside the bars and watched? It might, Your Honor, if he knew that the attack was over or was ending. I think here what we have—and again, I think it's also reasonable to infer that Mr. Johnson, perhaps after sustaining 49 wounds, was not as coherent as he may have been towards the beginning of the attack. But what we do know is that Mr. Johnson alleges that he saw Sergeant Lang standing there. And then from the other record evidence, we know that nothing was done until the attack was fully concluded and Mr. Johnson had, in fact, brought himself to the gate of the housing unit where he was noticed by a cubicle officer outside, Mr. Mitchell. And I think also important here is the causation inquiry in a failure-to-intervene case isn't— Mr. Johnson doesn't necessarily need to allege or testify as to how many fewer stab wounds he would have sustained had Sergeant Lang jumped in and acted or how long before the end of the attack he should have intervened. The question is really whether the officer's failure to act allowed the attack to continue unabated. And here, the testimony and the record evidence show that it did. And I think to the question of deliberate indifference, this Court has explained in Woodyard and Johnson that jurors could reasonably conclude that by failing to take any action while an inmate was being assaulted, the inmate has shown deliberate indifference. I'd like to— When you say inaction, you're not necessarily saying, though, that Sergeant Lang, there outside the bars, if he is, in fact, the solo officer because he's the only one who's been identified as outside the bars, you're not suggesting that he would have had to jump into the fray. You're just saying failure to intervene would encompass a failure to call for help as well. Indeed, Your Honor, that's the case. And I think one of the problems here, which I'll transition to Mr. Johnson's first claim because it's a similar issue there with the district court's opinion, is that the district court doesn't really engage with Mr. Johnson's testimony or the record evidence construed in favor of Mr. Johnson's claims. It just states Sergeant Lang's affidavit and then says to the extent that Mr. Johnson raises a claim, you know, that X or Y. And we see something—we see similarly with Mr. Johnson's first claim concerning the generalized violence in the prison. The district court only discusses the May 20th attack on Mr. Johnson and then one sentence about, you know, the guards not sitting in the chair. Nowhere in the district court's opinion appears Mr. Johnson's testimony concerning the atmosphere of violence at Holman or the attacks he had witnessed. And I think that leads to what's really one of the main problems with the district court's analysis of Mr. Johnson's first claim, which is that the court analyzed Mr. Johnson's claim under a specific threat framework. And five times over the course of the district court's analysis, it repeated, Mr. Johnson has not raised an issue of material fact concerning the generalized risk or defendant's knowledge of that risk at Holman because he has failed to identify at a time that he told defendants of a specific threat. As defendants point out in their brief, the court does come back and repeat this circuit's case law concerning generalized violence. But right after that, in the concluding paragraph of its analysis, it goes back and it says, there is no evidence that the attack was the result of failure to protect or inadequate security since there is no allegation by Mr. Johnson that he ever alerted officers of a fear of fellow inmates. Let me ask you this question. What evidence in the record shows that defendants Culliver, Dunn, Stewart, Mitchell, and Rabon had subjective knowledge about the degree of violence? Because it seems to me his allegations, his claims about that are pretty vague. Sure, Your Honor. Well, in the case of a generalized violence claim rather than a specific threat, this court has repeated several times that a fact finder may conclude that a prison official knew of a substantial risk from the very fact that that risk was obvious. And here Mr. Johnson describes rampant stabbings and attacks within Holman that occurred on a monthly, weekly, and at times daily basis. He describes an instance in which a guard was stabbed, a warden was stabbed, and we have the two attacks on his person within one month. This, I think, is adequate to show the substantial risk based on circumstantial evidence. And in Lamarca, for example, this court said a fact finder may infer or a reasonable observer in a warden's position, we can infer knowledge from such rampant and continuous violence. And I think it's also, we just don't know because the district court didn't incorporate or apparently analyze any of his testimony. It looks solely at Mr. Johnson's allegations about May 20th. And in doing so, it completely misses his claim that the situation at Holman was widespread and pervasive and the type of not the isolated occasional instances of violence. Briefly, with my time remaining, I'd like to address Mr. Johnson's third claim because, again, I think it's fairly Before you do that one record question, is the contention that he got into, he was assigned to one cell, cell A, and he got, he was over in B when this happened where he wasn't supposed to be with a contraband, a cell phone. Does the record tell me how he got, since you have a secure cell A, you have a secure cell B, it's bed check, they're doing bed check. How is Mr. Johnson over in B? Do we know how he got there? We don't, Mr., we don't know how Mr. Johnson got there. We just know he was in B. He wasn't supposed to be in B. I'm not saying it's his fault because he got attacked, but I'm just trying to understand how you get from A to B. There's a bed check. He's in B. And he's done that. But yet this guard, Mr. Lange, is supposed to have prevented, intervened here, and we don't really know how long it's even going on. But we don't know how he got to B or how long he'd been in B. Correct, Your Honor, we don't. And if anything, I think that really goes to Mr. Johnson's point, which is that guards really allowed the inmates within the cells to police themselves, and perhaps they conducted a nominal bed count. But isn't B a secured cell? I mean, you can't get in B unless somebody lets you out of A and puts you in B, or you're coming back from and you slip into B. Correct. We just don't know how he got over in B that night. We don't, Your Honor. We don't know how he was in B. And do we even, do we have any idea, because Johnson could have, forget about where Mitchell is, does Johnson himself say the attack lasted 10 minutes, 1 minute? Does he put a time on how long, the own attack that he's experiencing? I know we have 78 stabs, he says. The medical says 48. I don't, 49, I don't think it matters. It's a heck of a lot of stabs. And there are two of them doing it with knives. Does Mr. Johnson himself say how long the stabbing went on? He does not, Your Honor, but I don't believe under this court's case law he necessarily asked you. I'm not trying to draw conclusions. I'm just trying to understand what evidence I have. Yes, Your Honor. I see that my time has expired with the court's permission. Go ahead with your sentence. Well, I don't know. You can conclude your sentence. Okay. I was going to say with the court's permission I can revisit the third claim, either in rebuttal or briefly, as the court prefers. But just briefly on the third claim, the one point I would like to make is that I think that the district court somewhat misses the gravamen of Mr. Johnson's testimony here, which is that he was deprived of running water or a way to wash his face, hands, or body for 12 days in a cell that was hot and dirty, which under this court's precedent makes that a claim for deprivation of basic sanitation. And I think the court failed to analyze that and just discussed the mattress. With that, I'll conclude and come back for rebuttal. Thank you, Your Honors. Thank you. We'll give you your full three minutes for rebuttal. Mr. Wilson. May it please the Court. Thomas Wilson on behalf of the State Defendants. Now, I'd like to quickly revisit what we just heard. Judge Hall, in response to your question about whether Johnson needed to allege a specific time to make his claim, my friend on the other side said, no, I don't think that our case law actually requires that. Ironically, it's the exact case law that Johnson relies on to make his deliberate indifference claim that requires that. That case is Johnson v. Boyd. In Johnson v. Boyd, which we cited and which Johnson relies on, two unanimous panels of this court said that in order to state a claim for failure to intervene, the complaint, quote, must contain specific allegations regarding the timing of the episode. Now, in this litigation, in the Johnson v. Boyd litigation, two unanimous panels of this court reached that conclusion, one in its holding, another reaffirming it in the subsequent litigation in 2017. But the record isn't totally devoid of any information about the duration because we do know he says he was stabbed 78 times. There's other evidence it was 49. And then the record also shows that Officer Mitchell called for assistance to help Johnson after he observed Johnson walking toward housing unit B Gate bleeding in the chest area. So from that, don't we know that Mr. Johnson didn't – I mean, sorry, that Officer Lang didn't do anything? We don't know that, Your Honor. And we don't know that for a few reasons. First, Johnson, despite what he's representing on appeal, doesn't actually say in his briefing that Lang didn't do anything. He says that he stood outside, to Judge Branch's point earlier, stood outside the bars looking in. Johnson also claims that each time Lang was accompanied by Defendant Mitchell. Now, assuming that what Johnson said is true, we have someone else, an unaccounted-for body there, and we don't know what Defendant Mitchell was doing. Defendant Mitchell, for his part, of course, says that he wasn't there. But assuming what Johnson says is true, we have another guard who may have been calling for help, may have been intervening. We don't know because Johnson didn't tell us. Well, we can infer that the attack was over by the time Mitchell called for help because Johnson's walking away from the area. Would you agree with that? By the time that Mitchell called for help, yes, Your Honor, but Defendant Mitchell and Officer Mitchell were different people. And that's something that I don't think Plaintiff Johnson— Oh, no, I understand that. Okay. All I'm saying is that by the time someone called for assistance, Johnson was walking out bleeding. So he had already been—the attack had been completed. The attack appears to have been completed, yes, Your Honor. And the problem is that we know that there were 49 puncture wounds that resulted in what medical professionals called a non-life-threatening attack. Now, with two grown, violent men attacking someone with we don't know how many weapons because the weapons were never recovered, we simply don't know how long, without total speculation, 49 puncture wounds takes to accumulate on someone. That could have been a flurry of fists. That could have been—that could have lasted seconds. Or, to my friend on the other side's point, it could have lasted minutes. But the problem is we don't know because Johnson didn't tell us. In the very case that Johnson cites for support, Johnson v. Boyd, shows that his claim therefore fails as a matter of law. Not even for summary judgment purposes, but as a matter of law. Now, and I'll point to the Johnson v. Boyd complaint because it was actually significantly more detailed than what John Johnson offers here. In Docket Entry 1 in the District Court litigation of the Johnson v. Boyd case, Arnold Johnson provided evidence that five officers stood outside his cell watching as his cellmate engaged in a violent episode where he broke a sink, began to fight and punch a plaintiff, Arnold Johnson. Arnold Johnson then put him in a headlock. He gives us a little bit of a play-by-play of the actual fight, something totally absent here. And then the cellmate picked up a shard of a porcelain sink and stabbed Arnold Johnson in the face. It didn't matter, said the 11th Circuit, because Johnson had—Arnold Johnson had failed to allege the duration of the attack. So what Johnson did, Arnold Johnson, was amend his complaint. He said they were standing outside for at least 10 minutes. That was enough to survive the motion to dismiss, Your Honor. We don't have that here because Johnson never told us. Now, unless there are further questions about the failure to intervene claim from Your Honor, I will switch to the generalized risk discussion. Just one more question about that. Of course, Your Honor. The District Court did not mention Mr. Johnson's allegations about this incident in terms of Lange standing outside the cell and watching. Is that right? I don't recall specifically whether the District Court engaged in that specific allegation, Your Honor. All right. You can go ahead. Okay. But again, Your Honor, even if the District Court didn't, this Court can affirm on any grounds in the record, and I think that the Johnson v. Boyd litigation makes clear that there's a necessary element missing. Again, in Celotex, the Supreme Court explained that to survive summary judgment, a litigant— We know about Celotex. Let's go back to the facts here. Officer Mitchell, does he come and say anything about Lange being there, Lange wasn't there, or he wouldn't ask for the Lange was there when he called and he saw him come up? Or what does he say, if anything? I don't think Officer Mitchell provides any information about Lange. Was he deposed? I don't— Or affidavit or anything? I don't think that's in the record. But Officer Mitchell doesn't come and say Lange wasn't even there. I don't believe that— Lange just says I wasn't there. Lange does say that he wasn't there. He says I was in SEG, and actually there's some log that says, no, he was doing bed check. Yeah, I don't think there's actually a discrepancy between Lange's testimony. SEG and bed check? Well, he says that he was in segregation and that he was assigned to segregation to do this bed check, and that was part of the entire prison bed check. Okay, because that was his job that night was to do the bed check. But does he say what cell block he was in or the order he did the bed check? Did he go through A, B, C, D, E? So at the end of the bed check, he's more at E, or does he not address any of that? I think that what his testimony was, if I recall correctly, was that he was in the segregation unit at the time of this attack. Okay, and does he do that last in the bed check, first in the bed check? Or we don't know? I don't think we know for sure the order of operations in the record. I think it would be reasonable to assume. So you checked beds in the segregation unit too? I mean, it seems like you're checking beds in the dormitory. But was he checking beds in the segregation unit to make sure everybody was there or what? I believe he would have been, Your Honor. But we don't know what the order or any details about Lange's bed check that night. Other than it was completed by a certain time. By 1018, I think that that's right, Your Honor. And then the code red by Mitchell was at 1020. Have I got that right? Yes, Your Honor. Okay, so we got him doing the bed check to 1018, assuming, you know, we believe what he says. And then 1020 is the code red. Okay. I believe that's right, Your Honor. And when he does the bed check, can he move between the cells? Or do you have to come out of the cell, go back in the cell? Or do we know from the record? I'm just trying to physically visualize this place. Understood, Your Honor. And I don't think that the record gives us a clear indication of the physical layout of how the bed check would work. And do we have anything in the record about how he got from where his bed was in dormitory in A over to B where he wasn't supposed to be that night? Because I guess it was bed check. Everybody's supposed to be in their own cells with the contraband. How did he get over there? I don't believe that's in the record. Nobody knows. I don't believe that's in the record either, Your Honor. There is a document in the record. It's 3710, page 1, where it indicates that Sergeant Lange is assigned to population and not segregation, right? So is that the spreadsheet that you're referring to, Your Honor? I don't know if you can see it from there. Yes. Fortunately, I brought my glasses today. Okay. Was there any explanation of that? Well, Your Honor, I think that what we tried to explain in our brief was that the higher level officers all seemed to be under the population heading and that to draw an inference that they were only, therefore, assigned to population would be unreasonable. But again, Your Honor, I think that going back to Judge Branch's question, even if we assume that Lange was there, if we get past part of our, you know, the first part of our argument is, well, it requires speculation to place Lange directly outside staring at the bars looking in. Well, but Mr. Lange, but the plaintiff says that. I don't know why that's speculation. It may not be true. But he says he was outside the bars looking in during the attack. I mean, I don't know why it's speculation. It may not be true. He files a verified complaint himself, and he has that in the complaint. So we've got evidence. He's outside the cell looking in. The question, I think, is, well, what does that show? You've got a duration element. I think that that's exactly right, Your Honor, because staring, because witnessing an assault is perfectly consistent with lawful behavior. It's also consistent with liability. But to borrow Iqbal language, the plaintiff has to push something from just being consistent with liability to plausible liability. And Johnson didn't do that here because he never alleged a duration element. Is there a published case that says there is a duration requirement? I know that many of our cases mention the duration. But do we have precedent that says you have to allege the duration? I think that the published cases would be cited in Johnson v. Boyd. I don't think that they have a published case that specifically stated that there is a duration requirement. I think that it's clear from the cases, from the published cases cited in Johnson v. Boyd that that's necessary to show deliberate indifference. Because, again, deliberate indifference is what Lange would be potentially tried for and what a jury would have to have sufficient evidence to find to survive summary judgment. And simply staring, standing outside the bars looking in doesn't give a jury enough information to know whether Lange was behaving unconstitutionally or constitutionally, and let alone whether he was violating clearly established law to pierce through qualified immunity. Now, again, turning to the generalized risk, Johnson offers only unsubstantiated general allegations. The most specific allegation that he offers, which he hangs onto on appeal, is that over a four-year time span, quote, the stabbing count is off the charts, with three to four stabbings allegedly occurring in a single day. He doesn't tell us the circumstances of those stabbings. Was it a brawl? Was it some sort of great melee? We don't know. Three to four stabbings, these could have been discrete incidences. But also importantly, he doesn't actually say that this was based on his personal observation and personal knowledge. He just alleges that they occurred. So in the very case that Johnson cites in his reply, U.S. v. Stein, which explains that to have an allegation be sufficient for summary judgment, the allegation has to be based on personal knowledge or observation. Under that standard, Johnson's claims about the generalized risk at Holman prison don't survive summary judgment. Both Brown's and Lange's jobs required them to monitor prisoners in Holman, and given Johnson's allegation that there was a very high rate of stabbings, is that enough to infer that the level of violence would have been obvious to Brown and Lange, setting aside the other officers? I don't think so, Your Honor, because again, it wasn't based on any sort of personal knowledge. He just says that there's an enormous range of stabbings, or an enormous rate of stabbings. We don't know anything about those. As Johnson explained in his reply brief, the types of facts that you have to allege to survive summary judgment are of the who, what, when, and where variety. I think we might know what there, but we don't know who, we don't know when, and we don't know where. So these are wholly insufficient for summary judgment. Turning then to his living conditions claims, Your Honor, the Supreme Court and the Eleventh Circuit have made clear that the Eighth Amendment protects against unconstitutional, cruel and unusual punishments, not cruel and unusual conditions. To link conditions to cruel and unusual punishments, a litigant has to tie a defendant's specific knowledge, subjective awareness to those conditions, and then also show that the defendant was recklessly disregarded those conditions. Johnson just forgot to do this. Nowhere in any of his briefing or his complaint does he explain how the defendants, the living conditions defendants, were supposed to have known about the conditions that he alleges. And so he comes up with an interesting argument on appeal. On appeal, Johnson says that read in context, it's clear that one line from his complaint would have put all of the defendants, would have made all of the defendants aware of the conditions that he complains of. And that line is that Johnson saw the segregation board for three weeks straight before being returned to general population. Now, what Johnson claims in his reply brief is that the context is critical here because Johnson must have been conveying to the segregation board the, quote, conditions stated in that very paragraph, with emphases on in that very paragraph. There are a couple problems with this. First of all, there are no different paragraphs in Johnson's complaint. So whatever inference we're supposed to come up with about different paragraphs and statements and where they're placed on the page, those are completely irrelevant here. But second of all, nothing about saying that Johnson saw the segregation board shows that he actually conveyed this information to the segregation board, let alone the defendants. And, Your Honor, I see that my time is up. If I may just note, once again, Johnson has failed to even allege the necessary conditions of his claims. They're not fit to survive a motion to dismiss. They're certainly not fit to survive summary judgment under the qualified immunity standard. Thank you. Thank you. Your Honors, I'd like to start where we left off with Mr. Johnson's inadequate living conditions claims. Because counsel is correct, Mr. Johnson's complaint is not neatly divided into paragraphs. However, in the context of a single page where he is describing the conditions in his cell and his attempts to be removed from that cell, immediately thereafter he states that he petitioned the seg board for three weeks straight. But going back to Mr. Wilson's last point, what evidence is there of what information he put before the segregation board or that any of the defendants were there on that board or had any communications with that board that would give them subjective knowledge? Sure. Two things to that, Your Honor. First is that the conditions described here, specifically that there is no running water whatsoever in the cells, is a condition that should have been apparent to any knowledgeable observer. The ISRB board, the seg board that Mr. Johnson petitioned, the department's own handbook says that it will visit the inmate personally as well as review the file. And so part of the warden's job here is to visit the inmates in segregation. And while they were doing this, I think it's very reasonable to infer that they would have had knowledge of no water whatsoever or the fact that all of the inmates in the cell remained in the same clothes, unable to bathe for that entire 12-day period. And I think also important here is the fact that the district court did not acknowledge this claim. And as defendants continued to do on appeal, said that the conditions were merely unpleasant. But in order to do that, you have to ignore the most serious testimony in Mr. Johnson's claim, which is the deprivation of the ability to bathe or wash one's hands after using the restroom or in the hot cell for 12 days. I think this rises to the level that this court has found in other cases of the deprivation of basic sanitation and, again, is an open and obvious problem that would have been knowledgeable to wardens or guards before. I'd like to return briefly to the issue as well of the attack that Sergeant Lang observed because, as counsel opposite explained, in Johnson v. Boyd, the litigant there did amend his complaint and the court talked about a specific duration. But important in that case and different here is that in that case, the incident involved a prison cellmate having an episode where he was destroying the cell and roving around and making a mess. And the inmate was locked in there with him and alleged that guards were just watching. At the very end of this incident, the cellmate, I believe, grabbed a piece of porcelain and cut the litigant in this case. And so while it's correct that we do not have a play-by-play of how long Sergeant Lang was standing there in this case, the facts are quite different here. Mr. Johnson was under attack and perhaps he, you know, viewed Mr. Lang and wasn't as able to provide a play-by-play of what happened or the amount of time in minutes. But, again, we do have the record evidence that confirms Mr. Johnson's testimony and that allows a reasonable, not speculative, inference that this attack lasted several minutes. And I see that my time has expired, so I'd ask that Your Honors reverse. Thank you. Thank you very much. I know that you were court appointed and you have very ably discharged your responsibility to your client and to this court. Thank you. Thank you very much for that. Thank you.